GLADNEY, Judge.
This is a suit by plaintiff on open account for indebtedness incurred. The complaint also alleges defendant executed a chattel mortgage promissory note in the sum of $2,450 as evidence of a portion of the debt. Defendant’s answer generally denied the allegations of plaintiff’s petition and averred he was not liable for the amount claimed, which he asserts arose out of a joint venture entered into by the parties for the purpose of raising chickens for resale and undertaken with the understanding that defendant would not be liable for expenses incurred, except for the maintenance of broiler houses, for utilities, and for labor furnished. From a judgment in favor of the defendant, rejecting plaintiff’s demands, the latter has appealed. Subsequent to the trial of the case plaintiff died and his widow, Mrs. Alma Hamner Harper, has been substituted as party plaintiff.
The plaintiff, a vocational agricultural teacher, became interested as a broker or dealer in Lincoln Parish for the purpose of selling baby chicks and feed and broiler house commodities. Prior to this litigation Harper was a sub-dealer and Vincil C. Kates was a local representative for Archer Daniels Milling Company, a supplier of feed and commodities for growing, chickens. *858 This company granted credit to Harper and, as was its custom, required that he hold chattel mortgage notes to be executed by those to whom he furnished chicks and feed. When the negotiations between Harper and Jones concerning the matters involved in this suit were commenced, most of the broiler raisers of ]¿ie area, due to low prices being paid for broilers, were losing money. The defendant Jones, who owned several broiler houses, had for this reason closed his houses and had discontinued the business. On August 31, 1954, plaintiff delivered to the defendant 15,000 baby chicks and commenced supplying feed, insecticides and other necessities for the raising of the chicks to broiler size, and on September 4, 1954, the defendant executed the above referred to chattel mortgage note. The act of chattel mortgage affected only the baby chicks. When the chicks reached broiler size, plaintiff sold them to a processor at Logansport, Louisiana, for $8,-966.63, which was $2,359.23 less than the cost of the chickens, feed and incidentals, and it is for the latter amount that judgment is sought.
Plaintiff’s position is that according to the agreement between Jones and himself,he, Harper, would sell and deliver the chickens, supplies and incidentals necessary to Jones, who would raise the chickens to broiler stage, and that plaintiff would sell the chickens for the account of the defendant. Defendant’s position, on the other hand, is that he and Harper agreed the latter would furnish the chickens, feed and other incidentals for normal retail prices, and that he, Jones, would furnish chicken houses, labor and utilities and in return receive the proceeds of the sale in excess of the retail cost of the baby chicks, feed and other incidentals furnished. Defendant insisted that under the arrangement agreed upon he could lose only his time, labor and the cost of utilities for the chicken houses.
Plaintiff objected strenuously to the admissibility of parol evidence designed to contradict terms of the chattel mortgage evidencing Jones’ ownership of the chicks. The judge a quo overruled the objections on the ground that the testimony was not tendered for the purpose of attacking the validity of the chattel mortgage, but in order to disclose the real consideration which prompted the confection of the instrument. The testimony indicates the act of chattel mortgage and its accompanying note was given as an accommodation to Harper for obtaining credit, and was not conclusive as to the ownership of the chickens. A determination of the ownership of the chickens appears unnecessary herein for the proceeds of the sale were more than ample to, and in legal contemplation, did, pay in full any indebtedness represented in the instrument. The account sued upon, therefore, can only represent indebtedness for nonpayment for feed and supplies.
We approve of the ruling of the court allowing .parol evidence. This is an instance where the existence of a true and consistent consideration can be shown, not for the purpose of invalidating the contract, but in support of its validity. Pursuant to the provisions of LSA-C.C. Art. 1900 the true consideration for a written contract may be proved by parol evidence even though it is different from that cited in the agreement. Stephens v. Anderson-Dunham, Inc., 1958, 234 La. 237, 99 So.2d 95, and authorities cited therein.
Harper’s testimony was not corroborated by any other witness. He testified defendant agreed to accept title to, and be responsible for, all the feed and supplies furnished by the plaintiff. Plaintiff did call Vincil C. Kates as a witness, but the latter failed to improve Harper’s position. Furthermore, the testimony of defendant was confirmed by his wife, by his nephew, Plershel Pardue, and to some extent by Kates. The trial judge, in a carefully written opinion, thoroughly analyzed and weighed the testimony adduced and concluded the preponderance of the evidence supported defendant’s contention that he was not to be liable for any loss from growing the chickens. Our appreciation and understanding of the record has *859 brought us to the same conclusion reached by the trial court, whose finding we fully approve.
Accordingly, the judgment is affirmed at appellant’s cost.